# EXHIBIT 4

Message

**From:** Lawyer 1
**Sent:** 10/14/2015 8:16:35 PM
**To:** Roger Ver [roger@memorydealers.com]; Return Preparer 1
**Subject:** Re: Rental income, bitcoin valuation, update on company appraisals

Dear Roger,

We did some additional research on valuation of your BTC.

Not surprisingly, the IRS has no rules about cryptocurrency specifically, but we can compare BTCs to publicly traded stock. This is how it works for publicly traded stock.

DEFAULT RULE
Unit price is the exchange price. Total value is number of shares multiplied by unit price.

EXCEPTION FOR LARGE SHAREHOLDERS
If you own a block of shares that you cannot sell without depressing the market, then you can take this effect into consideration and discount the shares. However, because the default rule is number of shares times unit price, it is up to the shareholder to establish the discounted price.

NEXT ACTION
We think you can use this valuation method for your BTC. However, because we have the burden of proving the value is not number of BTC times exchange price, we would like an appraisal of your BTC value by a third party who has no personal interest in the tax implications of the appraisal. Do you know someone who is qualified to appraise your BTC holdings who can do this?

Best regards,

Lawyer 1



Law Firm 1

On 2015/10/13 23:01, Roger Ver wrote:
> Hi Return Preparer,
>
> Completely hypothetically speaking, what would the ramifications be if I were to have had 200,000 BTC at the time of my renunciation?
>
>
> Since the total trade volume for the day, world wide was only about $12M USD, and there would have been no possible way to liquidate that many bitcoins without crashing the price to the low double digits, it wound't seem fair for a valuation to be assessed at more than the total trade volume for that day.
>
> I look forward to hearing your thoughts,
>
> Roger Ver
>
>> On Oct 14, 2015, at 6:02 AM, Return Preparer 1 wrote:
>>
>>
>> Roger,
>>
>> Just wanted to come back to the bitcoin issue at this point as it is still on my open items list. We have the cost basis in our records; the other item we need is the number of bitcoins you owned on expatriation date. As previously mentioned, if it is not possible to determine this with certainty a reasonable estimate is acceptable for our purposes.
>>
>> Kind regards,
>>
>> Return Preparer
>>
>>
>> Return Preparer 1
>> Law Firm 1

EXHIBIT 4
1

**[Law Firm 1]**

>>
>> On 8/12/15 10:50 AM, [Lawyer 1] wrote:
>>> Dear Roger,
>>>
>>> Regarding the valuation of the bitcoins:
>>>
>>> The Treasury Regulations require us to value gifts of property on a per
>>> unit basis.  You can see this in the general rules for valuation of
>>> property under regulation section 25.2512-1 ("The value is generally to
>>> be determined by ascertaining as a basis the fair market value at the
>>> time of the gift of each unit of the property") and in the valuation of
>>> stocks and bonds under section 25.2512-2.
>>>
>>> The logic behind this rule is that when the property can be divided into
>>> individual units, the holder can theoretically sell them in discrete
>>> batches within a small interval of time and not depress the market.
>>>
>>> The average per unit price of bitcoins on the day before your
>>> expatriation was $800, as established by the average trading price of
>>> all volume of trades that occurred on that day.
>>>
>>> The result prejudices the assets of significant holders of a limited
>>> market--for example, your bitcoin holdings or the shares of a
>>> significant shareholder of a public corporation--, but it is
>>> unfortunately the rule that the law prescribes.
>>>
>>> Best regards,
>>>
>>> [Lawyer 1]
>>> **[Law Firm 1]**
>>>
>>>
>>>
>>>
>>> On 2015/08/12 09:27, Roger Ver wrote:
>>>> Hi [Return Preparer],
>>>>
>>>> Please see my answers inline below.
>>>>
>>>>
>>>>> On Aug 12, 2015, at 5:32 AM, [Return Preparer 1] wrote:
>>>>>
>>>>>
>>>>> Hi Roger,
>>>>>
>>>>> Three items for this email -- rental income, bitcoin valuation, and company appraisals.
>>>>>
>>>>>
>>>>> 1. Rental income. I am going through the rental income worksheets you had provided earlier this year, getting the data ready for entry into the tax returns, and a few questions came up.
>>>>>
>>>>> • I noticed some months have a negative income amount. Some have notes in the spreadsheet, but most don't. I attached the Hawaii properties spreadsheet for your reference. Do these negative numbers in the rental income section reflect expenses in excess of rental income?
>>>> That is correct.
>>>>>
>>>>> • If the rental income numbers include expenses paid on each property, that leads me to 2 more questions:
>>>>> 1) Is it possible to get a breakdown of gross rent received and a list of expenses by property?
>>>> I've attached all the statements I have for 2014.  It likely isn't worth spending much time on because your fee would likely quickly surpass any tax savings.
>>>> The property manager was also the real-estate agent I asked to sell all the properties initially.  After she didn't manage to sell them after a year,  I hired a new realtor that sold just about all of them within a few months.
>>>> Unfortunately,  the original realtor / property manager is no longer responsive because she lost me as a customer.
>>>>
>>>>
>>>>
>>>>
>>>>
>>>>

EXHIBIT 4
2

```
>>>>> 2) Assuming the rental income amounts are net amounts and not gross, should I expect that the net
rent income amounts provided here do _*not*_ include the annual expenses for property tax, mortgage
interest, and HOA fees? I am asking this because those expenses were provided separately to us, and I
want to make sure we are not double-counting them.
>>>> All of those expenses were paid separately by myself,  so you are not double counting them.
>>>>>
>>>>> • Where the rental income amounts fluctuate month to month, is that to reflect expenses being paid
in some months (if the rental income amount shown here is net and not gross), or is there an actual
fluctuation in the rent collected?
>>>> This would be due to a fluctuation in expenses month to month,  not a fluctuation in the gross rent.
>>>>>
>>>>> • Perhaps it would be helpful to have a bit of background on this, as well -- are the Hawaii
rentals for the most part long term rentals occupied by persons who reside there, or short term vacation
rentals?
>>>> They were all long term rentals.
>>>> In 2015 I managed to sell all of them.  (with one left that will be sold by the end of the year)
>>>>>
>>>>>
>>>>> 2. Bitcoin valuation.
>>>>>
>>>>> • [Lawyer 1] has researched this and determined that the we will have to use the $800 per bitcoin FMV
when doing the deemed sale for expatriation. Basically, there is no provision that we can find in the
Code that allows us to take into account how thin the market is when doing this type of valuation.
Therefore, to determine the total FMV of bitcoins you owned at expatriation date, I will need you to
provide me with the number of bitcoins you owned as of that day (if exact number is unknown, your best
attempt at approximation will suffice).
>>>> This seems impossible and unreasonable.
>>>> How could the Fair Market Value to be greater than the size of the entire market?
>>>>
>>>>
>>>>
>>>>>
>>>>> • The basis you provided -- $2,127,454 as COGS for www.bitcoinstore.com plus two separate purchases
for $320,000 and $100,000 constitute your basis in the bitcoins. The cost to build the website is not
included in the bitcoins' basis.
>>>>>
>>>>>
>>>>> 3. Company appraisals. I just am following up to find out the status of these. [Employee 1], perhaps you
can update me on this? I have notes that appraisals were ordered for the following:
>>>>>
>>>>> - Memory Dealers
>>>>> - Agilestar
>>>>> - [redacted]
>>>>> - Also please let me know if I omitted any companies from this list -- if I did, it was
unintentional.
>>>>>
>>>>>
>>>>> Kind regards,
>>>>>
>>>>> [Return Preparer]
>>>>>
>>>>> --
>>>>> [Return Preparer 1]
>>>>> [Law Firm 1]
>>>>>
>>>>>
>>>>>
>>>>>
>>>>>
>>>>> <Hawaii rental property income Jan-Dec 2014 - updated with mortgage interest and property tax.xls>
>>>>
>>>
>>
>>
>>
>
```

EXHIBIT 4
3